UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IAN WRIGHT,<br>        Petitioner,<br><br>        v.<br><br>WARDEN GUADARRAMA,<br>        Respondent. | No. 3:21-cv-710 (SRU) |

**RULING ON MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Ian Wright ("Wright"), incarcerated at the Osborn Correctional Institution in Somers, Connecticut and proceeding *pro se*, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 challenging the failure of the Board of Pardons and Paroles to schedule him for a deportation parole eligibility hearing. Respondent Warden Guadarrama ("Guadarrama") has filed a motion to dismiss the petition for lack of subject matter jurisdiction and failure to state a claim for habeas relief. For the following reasons, Guadarrama's motion is granted.

**I.      Background**

Connecticut General Statutes section 54-125d(c) provides that the state Board of Pardons and Paroles "shall enter into an agreement with [federal immigration authorities] for the deportation of parolees who are aliens . . . and for whom an order of deportation has been issued. . . ." Conn. Gen. Stat. § 54-125d(c). The statute further provides that "any person whose eligibility for parole is restricted under said subdivision shall be eligible for deportation parole under this section after having served fifty percent of the definite sentence imposed by the court. . . ." *Id*. Section 54-125d, in conjunction with a 1997 agreement between the state Board of Pardons and Parole and federal immigration officials, "allows foreign-born nationals

convicted of deportable crimes at the state level to be eligible to be paroled directly to the custody of INS for deportation after serving as little as 50% of their sentence." *Taylor v. Warden*, No. CV124004709, 2014 WL 783569, at *9 (Conn. Super. Ct. Jan. 23, 2014). Although extant, the agreement has not been put into practice. *Id.*; *see also* Pet's. Opp'n, Doc. No, 22 at 3 (citing to correspondence and testimony by the Board of Pardons and Paroles arguing same).

Wright, a Jamaican national, was convicted of murder in violation of Conn. Gen. Stat. § 53a-54a and carrying a pistol without a permit in violation of Conn. Gen. Stat. § 29-35 on March 22, 2002. Pet., Doc. No. 1 at 7; *Wright v. Comm'r of Corr.*, 201 Conn. App. 339, 342 (2020), *cert. denied*, 336 Conn. 905 (2021). He was sentenced to a total effective term of imprisonment of thirty-five years. *Id*. In 2013, the United States Immigration Court ordered Wright removed to Jamaica. *Wright*, 201 Conn. App. at 342.

After completing fifty percent of his sentence, Wright submitted several requests to the state Board of Pardons and Paroles seeking a hearing to determine deportation parole eligibility under Conn. Gen. Stat. § 54-125d(c). *Id.* Notwithstanding the requests, Wright was not provided a hearing. *Id.*

In 2018, Wright filed an amended petition for writ of habeas corpus in state court. *Id.* His petition claimed that a deportation parole eligibility hearing was required by section 54-125d(c) and that the government's denial of such hearing violated his due process rights. *Id.* The Connecticut Superior Court rejected Wright's interpretation of section 54-125d, emphasizing the discretion retained by immigration officials to establish an eligibility process, and dismissed the habeas petition for lack of subject matter jurisdiction. *Id.* at 343. The Connecticut Appellate Court dismissed the appeal, agreeing that the court lacked subject matter

jurisdiction because Wright had no protected liberty interest in deportation parole. *Id.* at 345-53. The Connecticut Supreme Court denied certification. *Wright v. Comm'r of Corr.*, 336 Conn. 905 (2021) (Mem.).

On May 25, 2021, Wright filed a petition for writ of habeas corpus in this Court, again challenging the defendant's failure to schedule him for a deportation parole eligibility hearing pursuant to section 54-125d(c). Pet., Doc. No. 1 at 2. The petition alleges that the Department of Correction and Board of Pardons and Paroles violated Wright's due process rights arising under the Fourteenth Amendment of the United States Constitution and Article First Section 8 of the Connecticut Constitution by failing to provide a hearing and by failing to adopt or implement a regulation to determine his parole eligibility under section 54-125d(c). *Id.* at 7. He seeks a deportation parole hearing or eligibility for deportation parole. *Id.* at 8.

Thereafter, I issued Guadarrama an order to show cause. Doc. No. 6. On August 4, 2021, in response, Guadarrama filed the instant motion to dismiss. Mot. to Dismiss, Doc. No. 10 at 1. He argues that this Court lacks subject matter jurisdiction because there is no federal constitutional right to parole and section 54-125d does not give rise to a liberty interest. *Id.* Wright filed an opposition, and Guadarrama filed a reply. Docs. No. 22-23.

**II.      Standard of Review**

Wright states that he files this petition under 28 U.S.C. § 2241, but he is a sentenced state prisoner. *See* Pet., Doc. No. 1, ¶ 4. State inmates challenging their convictions or sentences must seek relief through a petition filed under 28 U.S.C. § 2254. *See Cook v. New York State Div. of Parole*, 321 F.3d 274, 278 (2d Cir. 2003) ("A state prisoner . . . not only may, but according to the terms of section 2254 *must*, bring a challenge to the execution of his or her sentence—in this case with respect to revocation of Cook's parole—under section 2254.") Thus,


"a petition under section 2241 is therefore unavailable to him." *Id.*; *see also Griffin v. Cook*, No. 3:20-cv-589 (JAM), 2020 WL 2735886, at *3 (D. Conn. May 26, 2020) (same). Accordingly, pursuant to the special rules of solicitude for *pro se* litigants, I construe his petition as filed under 28 U.S.C. § 2254. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The federal court will entertain a petition for writ of habeas corpus challenging a state court conviction only if the petitioner claims that his custody violates the United States Constitution or federal law. 28 U.S.C. § 2254(a).

Guadarrama moves to dismiss the petition under Federal Rule of Civil Procedure 12(b)(1), for lack of subject matter jurisdiction, and Rule 12(b)(6), for failure to state a cognizable claim for habeas relief. The Second Circuit has stated that "the standards for dismissal under Rules 12(b)(1) and 12(b)(6) are substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003) (citations omitted).

"Under Rule 12(b)(1), an action is properly dismissed for lack of subject matter jurisdiction 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Pouncey v. KeyBank Nat'l Ass'n*, 2021 WL 4502951, at *1-2 (D. Conn. Sept. 30, 2021) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). In analyzing a motion under Rule 12(b)(1), the court may consider evidence outside the pleadings. *Id.* The burden of establishing subject matter jurisdiction rests with the petitioner. *Id.*

Under Rule 12(b)(6), a petition should be dismissed if it fails to state a claim upon which relief may be granted. To survive dismissal, the petition must present a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In making this assessment, the court accepts the allegations in the petition as true, draws all reasonable inferences in favor of the petitioner, and views all facts in the light most favorable to the non-moving party. *See Trustees*

*of Upstate New York Engineers Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

**III.     Discussion**

In the petition, Wright contends that section 54-125d(c) confers a protected liberty interest in deportation parole and that the government's failure to provide a deportation parole eligibility hearing violates his rights to due process.  Pet., Doc. No. 1 at 6 ¶ 13.  I disagree.

*First*, Wright cannot establish that he has a protected liberty interest in deportation parole.  "In order to state a claim for a denial of procedural due process . . . a prisoner must allege that he possessed a protected liberty interest[] and was not afforded the requisite process before being deprived of that liberty interest."  *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000); *Anthony A. v. Comm'r of Corr.*, 326 Conn. 668, 674-75 (2017) (quoting same).  "Liberty interests protected by the Fourteenth Amendment may arise from two sources—the Due Process Clause itself and the laws of the States."  *Meachum v. Fano*, 427 U.S. 215, 223-27 (1976).  Wright's argument is fatally flawed, because the Due Process Clause does not establish a federal constitutional right to parole and state law does not give rise to a liberty interest.

One, Wright is wrong about his repeated assertion that there is a constitutional and "inherent" right to deportation parole.  *E.g.,* Pet.'s Opp'n, Doc. No. 22, at 7.  The Supreme Court has patently held that there is no constitutional right to parole.  *See Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence. . . . A state may . . . establish a parole system, but it has no duty to do so.").  Instead, the decision to create a liberty interest in parole or deportation parole, and the extent of that interest, is a discretionary state law decision.  *See Perez v. Commissioner of Corr.*, 326 Conn. 357, 370

(2017). Accordingly, to establish a due process violation, Wright must show that state law— section 54-125d(c), in particular— created a protected liberty interest.

Two, Wright cannot establish a protected liberty interest under state law. "[T]o have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016), *as amended* (Feb. 24, 2016) (cleaned up). "[F]or a state prisoner who has not been granted parole, neither the mere possibility of release, nor a statistical probability of release, gives rise to a legitimate expectancy of release on parole." *Id.* at 60 (cleaned up). "[A] protectable liberty interest arises only if he has a legitimate expectancy of release that is grounded in the state's statutory scheme." *Id.* (cleaned up); *see, e.g., Board of Pardons v. Allen,* 482 U.S. 369, 377-81 (1987) (holding that Montana inmates had protectable liberty interest in parole where state statute provided that a prisoner "shall" be released on parole when certain conditions were met).

Wright tries to argue that the mandatory language in section 54-125d(c), providing that "any person whose eligibility for parole is restricted . . . *shall be eligible* for deportation parole . . . after having served fifty percent of the definite sentence imposed by the court," creates a legitimate expectancy of release in the statute. Pet., Doc. No. 1 at 7; Pet.'s Opp'n, Doc. No. 22, at 7-8. Focusing on the mandatory "shall," Wright disregards the discretion preserved by "be eligible." There cannot be expectancy where there is no certainty, and there is no certainty where— as in here— there is discretion with regard to eligibility. *See Greenholtz*, 442 U.S. at 7.

The plain text of Connecticut General Statutes undermines Wright's claim by expressly providing for discretion to determine eligibility. Section 54-125d allows the Department of Correction to "determine" individual cases to refer to the Board of Pardons and Paroles, Conn.

6

Gen. Stat. § 54-125d(b), pursuant to "an agreement with [federal immigration authorities]," Conn. Gen. Stat. § 54-125d(c).

The text of the referenced agreement between state and federal officials further undermines Wright's claim.  The agreement (which Wright includes with his Opposition) sets forth state and federal officials' discretion to determine eligibility.  Doc. No. 22 at 94.  It provides that the Board of Parole and Department of Correction "shall determine those inmates who *may* be eligible for removal based on interviews and standards set forth by the Immigration and Naturalization Service."  *Id.* (emphasis added).  Taken together, state law and the agreement created pursuant to state law expressly provides state and federal officials significant discretion over whether ("may") and how ("interviews and standards") to determine eligibility.  However, in case there remains any doubt, the agreement between state and federal officials explicitly disclaims any expectation giving rise to a liberty interest.  It specifically commands that "[n]othing in this Agreement shall be construed as creating a right, interest or expectation by any criminal that he/she will receive a deportation parole."  *Id.* at 100

In addition, the structure of the pertinent Connecticut statutes also precludes Wright's interpretation, because the overall statutory scheme preserves officials' discretion over parole eligibility.  Section 54-125d endows the Department of Correction with discretion to refer individual cases to the Board of Pardons and Paroles, and state law preserves the discretion of the Board to evaluate those who are referred.  Conn. Gen. Stat. §§ 54-125d(b), 54-124a(f) (providing "decision-making authority to [] grant *or deny* parole") (emphasis added).

Precedent further challenges Wright's reasoning.  The cases on which he relies for his argument regarding mandatory language, *Greenholtz* and *Allen*, are readily distinguishable. Pet.'s Opp'n, Doc. No. 22, at 9 (citing *Greenholtz*, 442 U.S. at 12; *Allen*, 482 U.S. at 378).  In

7

both, the Supreme Court considered dispositive that the statutory scheme cabined officials' discretion. Here, as explained, the Connecticut scheme protects officials' discretion. *See also Wright,* 201 Conn. App. at 352 (holding that "the deportation parole statute does not create an 'expectancy of release'" for the same reasons).

In sum, the text of section 52-125d, the agreement between state and federal officials, the overall statutory scheme, and distinguishable precedent do not mandate that the Board release an incarcerated person as Wright contends. Therefore, section 52-125d does not give rise to a legitimate expectancy sufficient to support a liberty interest.

*Second*, even if section 54-125(d) had created a protected liberty interest, the provision would not apply to Wright in the first place.

By its terms, eligibility for deportation parole pursuant to section 54-125d(c) does not include persons convicted of an offense specified in subdivision (b)(1). Conn. Gen. Stat. § 54-125d(c) ("Notwithstanding the provisions of subdivision (2) of subsection (b) of section 54-125a, any person whose eligibility for parole is *restricted under said subdivision* [(b)(2)] shall be eligible for deportation parole . . . after having served fifty per cent of the definite sentenced imposed by the court.") (emphasis added). In other words, individuals convicted of an offense under subsection (b)(2) are eligible for deportation parole after serving fifty per cent of their sentences, whereas individuals convicted of an offense under subsection (b)(1) are not. The crime of which Wright was convicted, murder in violation of section 53a-54a, is governed by subsection (b)(1)(E). *Id.* § 54-125a(b)(1)(E). Thus, it is not an offense eligible under subsection (b)(2).

Indeed, the crime for which Wright was convicted expressly bars him from deportation parole at present. Persons convicted of offenses "involv[ing] the use . . . of physical force

8

against another person," such as murder, "shall be ineligible for parole under subsection (a) until such person has served not less than eighty-five percent of the definite sentence imposed." *Id.* § 54-125a(b)(2). Wright, then, could only be eligible for deportation parole until serving at least eighty-five percent of his sentence. Accordingly, Wright's murder conviction plainly disqualifies him from the protected liberty interest he asserts was created.

In opposition, Wright cites two state court decisions concerning parole eligibility under section 54-125a(f), but they are inapposite. Each addresses parole eligibility for persons who committed crimes while a juvenile. Pet.'s Opp'n, Doc. No. 22, at 12 (citing *State v. Williams-Bey*, 167 Conn. App. 744 (2016), and *Boyd v. Comm'r of Correction*, 199 Conn. App. 575 (2020)). Those decisions arose under Conn. Gen. Stat. § 54-125a(f), and Wright makes no claim that section 54-125a(f) applies to him. Thus, Wright provided no relevant authority.

Wright also cites to *Brown v. Lundgren*, a Fifth Circuit decision, for the proposition that Guadarrama's failure to adopt regulations pursuant to the federal Administrative Procedure Act ("APA") gives the district court jurisdiction. 528 F.2d 1050 (5th Cir. 1976). *Lundgren*, by holding that "the mere expectation of parole release while still in otherwise lawful custody is not so vested as to result in a 'grievous loss' if denied by the parole board," undermines Wright's argument and supports the state's central contention that Wright lacks a liberty interest in deportation parole. 528 F.2d at 1053. Furthermore, *Lundgren* is inapposite; the case concerned federal custody governed by federal laws. Here, Wright's petition concerns a state system principally governed by state law.

Accordingly, I dismiss Wright's petition because he fails to state a cognizable claim for violation of his right to due process.

## IV. Conclusion

The respondent's Motion to Dismiss Petition for Writ of Habeas Corpus [**Doc. No. 10**] is **granted.** The Clerk shall close the file.

Because reasonable jurists could not disagree about the outcome in this matter, an appeal of this order would not be taken in good faith. Thus, a certificate of appealability will not issue.

So ordered.

Dated at Bridgeport, Connecticut, this 3rd day of January 2022.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge